IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**KENNETHY HORN,**

    **Plaintiff,**

v.                                                                                     No. 15-cv-0329 SMV/CG

**MESA WELL SERVICING, L.P.,**

    **Defendant.**

### MEMORANDUM OPINION AND ORDER
### DENYING DEFENDANT'S MOTION TO DISMISS
### AND AWARDING LESSER SANCTIONS

THIS MATTER is before the Court on Defendant's Motion to Dismiss [Doc. 46], filed February 18, 2016. Plaintiff responded on March 14, 2016. [Doc. 56].[1] Defendant replied on March 28, 2016. [Doc. 61]. Oral argument was held on May 31, 2016. [Doc. 78]. The Court, having considered the briefs, oral argument, and relevant law, and being otherwise fully advised in the premises, finds that Defendant's Motion to Dismiss [Doc. 46] should be denied. The Court will not dismiss the complaint. However, the Court will award lesser sanctions.

**Background**

Defendant's Motion to Dismiss ("Motion") is premised on purported dishonesty by Plaintiff and his attorneys. Essentially, Defendant asks for dismissal because it believes it has proof that Plaintiff is a liar, and that he lied about being harassed at Mesa because he is African-

---

[1] Plaintiff's response [Doc. 56] was untimely, as it was filed 25 calendar days after Defendant's Motion. *See* D.N.M.LR-Civ 7.4(a) ("A response must be served and filed within fourteen (14) calendar days after service of the motion.") *and* D.N.M.LR-Civ 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."). However, the Court later granted Plaintiff's unopposed motion for an extension of time to file the response. [Doc. 72]. The response is deemed timely. [Doc. 76].

American, the essential element of his claims. Defendant asks the Court use its inherent authority to dismiss the entire case with prejudice, or to dismiss Plaintiff's claims for lost wages and punitive damages. [Doc. 46] at 17. Defendant points to five incidents of dishonesty that it believes entitles it to dismissal:

1. **Plaintiff's testimony about employment applications**

During his deposition in this case, Plaintiff was shown his New Mexico Job Search Activity Card, *see* [Doc. 56-4] at 2, on which he was required to list the places where he had applied to work in order to receive unemployment benefits from the state, *see* [Doc. 46-4] at 11. Plaintiff admitted that he had not filled out a written application for each potential employer he had contacted (sometimes he applied in person or called), but distinctly remembered filling out a written application for each employer listed on the card. *Id*. at 11. On the card, Plaintiff indicated both "application in person" and "call back" as activity codes. [Doc. 56-4] at 2.

Defendant subpoenaed records from the employers listed on the card to see if they had any documentation of Plaintiff's applications. Four indicated that they had no responsive documents. Two indicated that they did not keep records of applications indefinitely, and the others did not state how long they keep such records. [Doc. 46-6] at 1, 2, 11–15. One attached what appears to be an application from Plaintiff's son. *Id*. at 3–10. Another asked for an extension to search its record. *Id*. at 16.

2. **Plaintiff's testimony and answers to interrogatories about his reason for leaving a prior job**

Defendant alleges that Plaintiff has provided contradictory answers as to his reasons for leaving a past employer, E.L. Farmer, in his deposition and interrogatories in this lawsuit and in his deposition in the Bull Rogers lawsuit. [Doc. 46] at 6. In Plaintiff's response to an

interrogatory, he stated that he was fired for missing work. [Doc. 46-4] at 17. In his deposition in this case, he stated that Defendant was the only employer that had fired him, *id*. at 12, and that he left E.L. Farmer because he was not making enough money, *id*. at 5. In his Bull Rogers deposition, he stated that he left E.L. Farmer because he was being harassed. [Doc. 46-3] at 3.

### 3. Plaintiff's answers to questions on job applications

Defendant alleges that Plaintiff lied on job applications about his past criminal history and his reasons for leaving past employers. [Doc. 46] at 6.

### 4. Plaintiff's Motion to Quash

This allegation of dishonesty concerns the conduct of Plaintiff's attorneys. One of Plaintiff's attorneys in this case, Mr. Dauphinot, also represented Plaintiff in his lawsuit against Bull Rogers. Defendant attempted to subpoena a certified copy of Plaintiff's deposition in the Bull Rogers case. Plaintiff filed a motion to quash the subpoena. [Doc. 40]. In that Motion, Plaintiff's counsel represented to the Court that the Bull Rogers deposition had no relevance to any issue in this lawsuit:

> A deposition given in a prior law suit has no relevance to any issue involved in this law suit, nor would it be reasonably calculated to lead to the discovery of relevant or admissible information. Defendant is not reasserting a claim against his prior employer and is not seeking any compensation for his experiences at his prior company. It is difficult to imagine a legitimate justification for Defendant to subpoena a deposition given in a completely unrelated case other than to harass, annoy, or potentially embarrass the Plaintiff.
> Defendant is engaging in nothing more than an impermissible fishing expedition in the hopes of uncovering some tidbit of inadmissible, irrelevant information that Defendant could then use to assassinate Plaintiff's character.

*Id*. at 4–5.

3

However, Plaintiff's attorney was present at the Bull Rogers deposition and heard Plaintiff's testimony about his experience at Mesa. *See* [Doc. 46-3] at 1 (cover sheet of Plaintiff's Bull Rogers deposition indicating that Mr. Dauphinot was present).

5. **Plaintiff's testimony in the Bull Rogers deposition**

In 2013, Plaintiff sued his then-employer Bull Rogers, alleging racial harassment and constructive discharge. [Doc. 50-2]; *see Horn v. Bull Rogers, Inc.*, No. 13-cv-0177 KG/GBW (D.N.M. filed Feb. 22, 2013). By the time Plaintiff was deposed in the Bull Rogers lawsuit in November 2013, he had been working for Defendant for some months. [Doc. 50-3] at 3. In his deposition, Plaintiff discussed the racial harassment and treatment he experienced at Bull Rogers and other previous employers. *See generally* [Doc. 46-3]. In support of its Motion, Defendant points to two portions of the Bull Rogers deposition that, in Defendant's view, show that Plaintiff's allegations in this case must be untrue:

> Q: And what do you do for Mesa Well Service?
>
> A: I'm a floorhand.
>
> Q: Is that on a drilling rig?
>
> A: Drilling rig.  Pulling unit.
>
> Q: For Mesa Well Service, do you experience the same kind of harassment as at [your former places of employment, including Bull Rogers]?
>
> A: No, sir.
>
> ***
>
> Q: You would never use the kind of language that [your co-workers at Bull Rogers] used, would you?
>
> A: No sir, I wouldn't.

4

> Q: Okay. Do you know, do the people around you use that kind of language?
>
> A: The people - - my coworkers?
>
> Q: Your coworkers.
>
> A: Yes, sir. They use that kind of language.
>
> Q: Do they at Mesa?
>
> A: No. You talking about at Mesa or - - you talking about at Mesa, right?
>
> Q: Yes, sir.
>
> A: No, sir. They do not use those kind of words at Mesa.

*Id*. at 3, 8.  It is difficult to tell from these questions and answers alone exactly what defense counsel meant by "that kind of language," or what Plaintiff meant by "those kind of words." However, earlier Plaintiff testified that his co-workers at Bull Rogers called him a "nigger" and a "stupid ass nigger." *See* [Doc. 46-3] at 4–6.

In his deposition in this case, Plaintiff testified that he had been harassed and referred to by racial slurs, specifically including "nigger" and "stupid ass nigger," while working for Defendant. *See generally* [Doc. 46-4] at 7–9 (portions of Plaintiff's deposition in this case taken on December 14, 2015).

While Defendant lists these five instances of purported dishonesty by Plaintiff or his attorney, it is clear that "the primary basis for [Defendant's Motion] is that Plaintiff previously testified under oath [in the Bull Rogers lawsuit] that he did not experience racial discrimination while working at Mesa and is now, in this lawsuit, lying and saying he did." [Doc. 61] at 3.

5

**Standard for Dismissal**

A district court has inherent equitable powers to impose the sanction of dismissal with prejudice because of abusive litigation practices during discovery. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987); *cf. Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172 (10th Cir. 1995); Fed. R. Civ. P. 37(b)(2)(A). "Because of the harshness of dismissal, however, due process requires that the discovery violation be predicated upon willfulness, bad faith, or [some] fault of petitioner rather than inability to comply." *Archibeque*, 70 F.3d at 1174 (internal quotation omitted).

While recognizing that there is no rigid test for determining when such a sanction is appropriate, the Tenth Circuit has suggested that a district court ought to evaluate five factors before imposing a dismissal sanction: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920–21 (10th Cir. 1992).

Dismissal as a sanction for discovery violations is an extreme measure, imposed under the most serious of circumstances. *Compare Maples v. Vollmer*, No. CIV 12-0294 JB/RHS, 2013 WL 1009558 (D.N.M. Mar. 5, 2013) (denying defendants' motion to dismiss based on plaintiff's apparently contradictory answers to interrogatories and questions in deposition), *with Garcia v. Berkshire Life Ins. Co. of Am.,* 569 F.3d 1174 (10th Cir. 2009) (affirming district court's dismissal of case based on plaintiff's intentional fabrication or falsification of at least four documents she produced during discovery and her "evasive and inconsistent answers"

during the hearing on the motion to dismiss), *and Lee v. Max Int'l., L.L.C.*, 638 F.3d 1318 (10th Cir. 2011) (affirming district court's dismissal of case when plaintiffs failed to produce documents in response to a discovery request and violated two judicial orders compelling production of the documents), *and Freddie v. Marten Transp., Ltd.*, 428 F. App'x 801, 804 (10th Cir. 2011) (affirming district court's dismissal when plaintiff in personal injury case lied in his deposition and answers to written discovery about his preexisting injuries and conditions and repeatedly failed to provide information about his past medical providers). "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." *Ehrenhaus*, 965 F.2d at 921 (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1521 n.7 (10th Cir. 1988)).

## Analysis

Defendant asks the Court to use its inherent authority to dismiss this lawsuit with prejudice. Defendant focuses on (1) the inconsistency between Plaintiff's testimony in the Bull Rogers deposition and his testimony in this case, and (2) counsel's misrepresentations in the motion to quash. This makes sense because it is unclear how the other incidents—Plaintiff's testimony about where he filled out written job applications, his inconsistent testimony about why he left a different employer, and his failure to tell the truth about his criminal history on other job applications—could conceivably serve as grounds for dismissal. Indeed, Plaintiff's failure to list his criminal record on other job applications does not relate to discovery or the judicial process at all. While these incidents obviously provide Defendant with fodder for impeachment of Plaintiff at trial, they do little to support the sanction that Defendant seeks. Therefore, the Court will focus on (1) the inconsistency between Plaintiff's testimony in the Bull

Rogers deposition and his testimony in this case, and (2) counsel's misrepresentations in the motion to quash.

Before addressing the *Ehrenhaus* factors, the Court will analyze the three cases most relied upon by Defendant. The first is *Chavez v. City of Albuquerque*, 402 F.3d 1039 (10th Cir. 2005). In that case, an officer of the Albuquerque Police Department discovered Chavez alone in his car, parked in a park that was closed at the time. Chavez gave the officer a false name and said that his birthday was March 27, 1975. A computer search revealed a violent gang member alert for a person whose date of birth matched the one Chavez had given. Chavez fled the scene in his car when the officer attempted to arrest him. Several other officers joined the chase. Chavez's car was found abandoned.

Meanwhile, a local resident called 911 to report that a man matching Chavez's description had just broken into her apartment near where the car had been abandoned. Shortly thereafter, two officers spotted a man matching Chavez's description running away from the location of the break-in. Chavez was eventually arrested.

Chavez sued the arresting officer and the Albuquerque Police Department under 42 U.S.C. § 1983, claiming use of excessive force during his arrest. Throughout discovery, Chavez steadfastly maintained that he was not the subject the police had been chasing. Both in sworn answers to interrogatories and in sworn deposition testimony, Chavez insisted he had been walking to a friend's house when he was arrested. However, when he testified at trial, Chavez finally admitted on cross-examination the he was, in fact, the suspect police had been chasing.

The jury returned a verdict in favor of Chavez on his claim of excessive force and awarded him $1.00 in nominal damages. The arresting officer filed a Fed. R. Civ. P. 50 motion,

arguing that the case should be dismissed as a sanction for Chavez's admitted perjury. After thoroughly reviewing the *Ehrenhaus* factors, the district court granted the motion, and the Tenth Circuit Court of Appeals affirmed.

The second case on which Defendant relies is *Archibeque*, 70 F.3d 1172. In that case, Archibeque sued the railway company ("Atchison") under the Federal Employers Liability Act, seeking damages for a lower back injury allegedly sustained while working for the company. Specifically, she claimed to have suffered a herniated disk in her lower back as a result of a work-related accident that allegedly occurred on December 29, 1990. In her answers to Atchison's discovery requests, the plaintiff stated under oath that she had not injured her lower back prior to the December 1990 injury. She also provided a set of medical records for treatment she had received prior to December 1990. Plaintiff signed a statement that the medical records she had provided were complete. The records contained no reference to any lower back symptoms or treatment prior to December 1990.

Eventually, through other investigation and discovery, Atchison was able to determine that for over 10 years prior to the alleged December 1990 accident, plaintiff had sought and received medical treatment for lower back pain. Specifically, the documents uncovered by Atchison revealed that plaintiff had sought treatment for a variety of lower back ailments on more than 15 occasions, involving at least six physicians. Plaintiff made no attempt to explain her numerous misrepresentations under oath.

Atchison filed a motion to dismiss under Fed. R. Civ. P. 37(d), arguing that plaintiff's repeated perjury warranted dismissal of the complaint. The district court, after analyzing the *Ehrenhaus* factors, granted the motion. The Tenth Circuit Court of Appeals affirmed.

The third case on which Defendant relies is *Brown v. Oil States Skagit Smatco*, 664 F.3d 71 (5th Cir. 2011). In that case, Brown, an African-American, claimed that several of his co-workers made racially derogatory remarks to him on a daily basis. On June 16, 2009, Brown filed a discrimination action against Oil States, alleging claims of racial harassment and constructive discharge.

Brown was subsequently involved in an automobile accident in which he claimed to have injured his back. On January 5, 2010, he gave a deposition in a personal injury lawsuit he had filed as a result of the accident. In that deposition he testified that he stopped working for Oil States solely because of the injuries he had received in the accident:

> Q. Why [did you stop working at Oil States]?
>
> A. Because my back was killing me. I stayed in pain all the time. . . .
>
> Q. Did you stop working [at Oil States] because of this accident, or did you stop working for any other reason?
>
> A. Because of the accident.

664 F.3d at 74 (internal ellipsis omitted).

On May 26, 2010, Brown gave a deposition in the discrimination case against Oil States. He gave the following testimony regarding his decision to leave Oil States:

> Q. You quit on June 10, 2008; does that sound familiar?
>
> A. That sounds familiar.
>
> Q. Who did you talk to when you quit?
>
> A. I talked to Frank [a company supervisor].
>
> Q. What did you tell Frank?

10

> A. "Frank, man, this guy calling me all kind of niggers and spitting around me and stuff, and all this stuff, monkeys and stuff." Frank already knew about it and stuff like that. "I'm going to talk to him." "No. Don't go talk to him. I quit." "Man, why you going? Don't quit. We need you, man. You a good worker," and stuff like that. "No, man, I quit. I had enough." I said, "Oh, that's it. I might have a breakdown over here." I said, "That's enough. I quit."
>
> ***
>
> Q. Was there any other reason, other than what you've already told me, for why you quit?
>
> A. I don't understand the question.
>
> Q. Did any other reason play a role in why you decided to quit, other than what you've told me today?
>
> A. Oh, no, ma'am.

*Id*. at 74–75 (alterations in original).  Brown never mentioned his back pain, contradicting his sworn deposition testimony in the personal injury lawsuit.

Oil States filed a motion for sanctions. Brown did not dispute that he had given contradictory sworn testimony; he merely argued that dismissal was too harsh a punishment. The magistrate judge issued a Report and Recommendation ("Report"), recommending that the complaint be dismissed with prejudice, commenting that "Brown has been caught lying under oath." *Id*. at 75. The district court adopted the Report and dismissed Brown's complaint against Oil States. The Fifth Circuit Court of Appeals affirmed.

These three cases share two things in common. First, in each case there was no doubt that the plaintiff had committed perjury. From what the Court can tell from reading the opinions, it does not appear that any of the plaintiffs even attempted to argue that he or she had not committed perjury. It was a given. Second, in each case the perjury was clearly and

unequivocally "pinned down." That is to say, the plaintiffs were asked unambiguous questions (in interrogatories or at their depositions) and gave clear and unambiguous answers that later proved to be perjurious.

Such is not the case here. Although Plaintiff has made no effort to explain the apparent inconsistencies between his testimony at the two depositions, it is not entirely clear he has committed perjury. In both depositions, the examining attorneys asked ambiguous questions (e.g., "[Do] the people around you use that kind of language," without making clear exactly what "that kind of language" referred to), nor did they follow up with questions designed to clarify Plaintiff's answers (e.g., "Have your co-workers at Mesa ever called you a 'nigger?'").

Essentially, Defendant is asking the Court to *deduce* that Plaintiff (1) understood the questions, and (2) gave intentionally untruthful answers to them.  That is not the Court's role; it is the jury's.  Regardless of the Court's suspicions (and the Court does suspect that Plaintiff has been untruthful), a sanction as drastic as dismissal should not be based on a suspicion.  The Court will proceed, therefore, to analyze the *Ehrenhaus* factors.

As to the first *Ehrenhaus* factor, the Court is not persuaded that Defendant has suffered a high degree of prejudice.  Defendant argues that Plaintiff's dishonesty—specifically, his testimony in the Bull Rogers deposition—has "hampered [its] ability to prepare an appropriate defense" and has led to the unnecessary expenditure of resources to verify if Plaintiff's discovery responses are true.  [Doc. 46] at 12.  Plaintiff's response to Defendant's argument about the prejudice it suffered is unintelligible.  *See* [Doc. 56].  The Court is sympathetic to Defendant's argument that it has expended resources in trying to independently verify Plaintiff's responses to discovery after it discovered his inconsistent testimony in the Bull Rogers deposition.

What is less clear, however, is how this inconsistent testimony has hindered Defendant's ability to prepare a defense. Plaintiff's Bull Rogers testimony did not prevent Defendant from investigating Plaintiff's claims. In fact, it could very well help Defendant to discredit Plaintiff at trial. *See Maples*, 2013 WL 1009558, at *26 (noting that allowing the defendant to impeach the plaintiff with his contradictory versions of events at trial would likely benefit the defendant). Defendant has suffered minimal prejudice, if any, as a result of its discovery of Plaintiff's Bull Rogers deposition, and has vastly improved its ability to impeach Plaintiff on what Defendant acknowledges is the "seminal issue in this case." [Doc. 61] at 1. While this factor may weigh in favor of the imposition of sanctions, it weighs against one as drastic as dismissal.

As to the second *Ehrenhaus* factor, Defendant has presented evidence that Plaintiff's discovery practices have interfered with the judicial process. The Court is seriously concerned with Plaintiff's counsel's conduct regarding the motion to quash. Plaintiff's counsel represented that the "deposition given in [the Bull Rogers] lawsuit has no relevance to any issue involved in this lawsuit, nor would it be reasonably calculated to lead to the discovery of relevant or admissible information." [Doc. 40] at 4. That was untrue. The motion was, at least, frivolous. While this factor weighs in favor of the imposition of sanctions, it does not justify dismissal.

As to the third *Ehrenhaus* factor, Defendant has not shown that Plaintiff is plainly culpable. Most of the dishonest incidents that Defendant raises are irrelevant to the central issues in this case. The exception is the Bull Rogers deposition. At first glance, Plaintiff's testimony in the Bull Rogers deposition appears incompatible with his allegations and testimony in this case. However, it is not entirely clear that Plaintiff could only be telling the truth in either the Bull

13

Rogers case or this case.  The questions and answers are simply not direct and sufficiently unambiguous to draw that conclusion as a matter of law. This factor weighs against dismissal.

Neither the fourth or fifth *Ehrenhaus* factors provides support for dismissal.   As to the fourth *Ehrenhaus* factor, there have been no prior warnings from the Court that dismissal was on the table.  Finally, the Court is not persuaded that lesser sanctions would be ineffective.   These factors weigh against dismissal.

## Conclusion

Based on the foregoing analysis, the Court finds that dismissal is not warranted.  The "aggravating factors" that are present here do not "outweigh the judicial system's strong predisposition to resolve cases on their merits."  *Ehrenhaus*, 965 F.2d at 921.  Likewise, the Court finds that dismissal of Plaintiff's claims for lost wages or punitive damages is not warranted.

Having said that, the Court will impose lesser sanctions. The Court finds that Plaintiff's counsel did not act in good faith in filing the motion to quash.  Having represented Plaintiff at the Bull Rogers deposition, he was aware that Plaintiff had given testimony about how he was treated at Mesa. Under no stretch of the imagination could Defendant's subpoena not be considered reasonably calculated to lead to the discovery of admissible evidence. The Court will order Mr. Dauphinot to personally pay Defendant's costs and expenses, including reasonable attorney fees, incurred in connection with the motion to quash.  Defendant shall submit an affidavit of costs and attorney fees by **June 21, 2016**.  Plaintiff's objections to the reasonableness of the amount claimed, if any, are due by **June 28, 2016**.

The Court is also concerned that, although Plaintiff submitted a declaration with his Response to the Motion to Dismiss, he made no attempt whatsoever to explain the inconsistencies between his sworn testimony in the Bull Rogers deposition and his deposition testimony in this case. *See Archibeque*, 70 F.3d at 1174 ("[Archibeque] has at no time, even in her arguments to this court on appeal, explained her conduct."). If, in fact, Plaintiff has some explanation for his apparently inconsistent testimony, it would be patently unfair to allow him to disclose that explanation for the first time on cross-examination at trial. Therefore, if Defendant wishes to take a supplemental deposition of Plaintiff, it may do so no later than June 30, 2016. Counsel must cooperate in scheduling the deposition on a mutually convenient date. If counsel cannot agree on a date, the deposition will take place (assuming Defendant wishes to take it) on June 30, 2016, beginning at 10:00 am, at the offices of defense counsel. It will be limited to two hours of questioning on the record. Plaintiff will pay the full cost of the deposition, including the court reporter's fee and reasonable attorney's fees. Defendant must submit an affidavit of costs and attorney's fees by **July 6, 2016**. Plaintiff's objections to the reasonableness of the amount claimed, if any, are due by **July 12, 2016**.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion to Dismiss [Doc. 46] is **DENIED** as stated herein.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**